The next matter, No. 241679, Keybank National Association and Green Earth Photovoltaic Corporation et al., and No. 241682, Green Earth Energy Photovoltaic Corporation et al. versus Keybank National Association. At this time, would counsel for the appellants, Green Earth, please introduce themselves on the record to begin. Yes, good morning, Your Honors. Benjamin Duggan for the appellants, the Green Earth parties. May I reserve two minutes? You may. Thank you. This case has been before you about two years ago in a different posture. This is now the second time I've stood at this podium arguing this case. The grant of summary judgment was wrong. It was clearly wrong. It was wrong because there were genuine disputes of material fact all over the place. I'd like to focus on three distinct areas of disputes of fact with you today. The first is, was there an oral contract formed in October of 2017? The second major area of dispute is, who breached the Bible Way contract? Who breached it first? The third major area of dispute, who breached Springfield first? And when you look at the facts and the record we've now developed pertaining to these issues, the grant of summary judgment, it really is just completely and totally wrong. And the wrongness begins with the 12b-6. And you can't really understand how we got to this position without understanding the 12b-6 and the error that permeates the 12b-6. I would urge you to reverse the 12b-6 decision on your way to reversing the summary judgment grant and to restore this case to the trial list with all of our claims, as alleged in the Second Amendment complaint, intact the way the case should have been in the first place. There were fundamental rules, of course, of pleading and what you have to plead to plausibly show relief on a breach of contract theory. The trial court erred fundamentally on the first issue I want to discuss. When the trial court determined at the 12b-6 decision that we, the plaintiffs, had set forth sufficient facts to show clear, detailed terms of an enforceable contract, that's right in the district court's own 12b-6 decision, that should have stopped the analysis. But then the trial court goes a step further, and this is the error that has set this whole case astray. The trial court, it should have just stopped and said, we've plead enough, we've shown enough detail on terms, we're done, let's go to discovery. Instead, the trial court says, based on my own experience with banks, I hereby determine that the bank did not intend to be bound by an oral agreement. Can I just go back one step? Yes. I take the point about the specificity on terms. Yes. But with respect to agreement, what was the allegation there, and to what extent, because it's not enough to plead that there was a contract, that there were terms. There has to be an agreement to those terms also, correct? Well, certainly to form a contract, you have to intend to be bound. And so you've got to plead that the contract was formed, not just that there were terms put forward. Sure. Okay, and so you did plead that there was agreement. We did. Okay, and I guess what I'm asking is, there's at least a possibility that just pleading that there was an agreement, and then the specification of the terms, could be understood as conclusory, because the legal question is, was there agreement? So was there any allegations with respect to what happened in the course of dealing, such that one could say that there was facts plausibly suggesting agreement to these terms which were specific? Yes. Do you follow the question? Yes. Okay. There were many such facts. Give me a flavor of what some of them were. There were many paragraphs alleged, specifically about the October 4, 2017 meeting. Who was there, including high-ranking executives from the bank, what they were all talking about, what they all wanted to do. We set forth in specific language the terms discussed, the various things they were all going to do after that meeting. And with respect to the agreement side of it. Yes. What facts were alleged? You can, I would argue two things. First of all, we alleged in the complaint that when this all broke down, Jeffrey Eads, who was present at that initial meeting, his testimony, and this was borne out in discovery as well, he himself claims he was blindsided. In other words, he's speaking for the bank in October, thought he had left that meeting with an intact deal that he could rely on, and then the bank shifts. That's in the complaint? The Jeffrey Eads statement about blindsided is in the complaint, yes. There's also, and this is why it's important to note, once we allege specific terms, it is a fair inference to draw that a party that reaches those specific terms intends to be bound by them. A party that what? A party, here the bank. We would tell you that a bank that agrees to or lists out specific terms. They listed them? Is that alleged? Yes, at the October 4th meeting. That they were the ones who listed the terms? The bank, this was all the bank's idea. All of it. I'm just asking what's in the complaint. In the complaint, and there were numerous paragraphs. Saying that the bank laid out these terms. This was the bank's idea. This is what the bank wanted to do. These are the terms the bank's proposing. The trial court agrees with us. These are all definite enough to be enforceable. You can draw an inference at that point. Certainly at the 12 v. 6 phase. That it was making an offer that could be accepted. And that they intended to be bound by it. And so then the idea is that when you allege that there was an agreement based on those terms, that you had plausible factual foundation so that we could say such an agreement was struck. That's exactly right. Okay. And that is why the trial court's error was so fundamental when it went out on a limb. And said, I'm going to go beyond the bounds of the four corners here. And I'm going to rely on my own experience with banking. And just infer that a bank would only be bound ever in writing. And then we go into discovery. And that's not true. The bank itself admits it's bound by oral deals and modifications all the time. And you see them in this case repeatedly. Just so I understand how this case proceeds. If you win on the 12 v. 6 motion, that reinstates what? A claim? That would reinstate all of our claims that fall under the umbrella of the $70 million contract. And if you lose on that 12 v. 6 claim on appeal, that doesn't prejudice your other claims that are the subject of the summary judgment? Technically, correct. We have other claims specific to Bible Way and Springfield. They're all related. And I would say it would be very hard to parse them out such that you would say summary judgment should not have been granted, say, on Springfield, but it was correct on the 12 v. 6 decision. Because the arguments are all the same. The fundamental argument we're making. Why is that so? Because I thought some of the arguments you were making on summary judgment had to do with waiver of the deadline. They do. Per course of dealings and oral modification. The trial court just says. That's a separate set of facts than the questions of whether the complaint had enough allegations to set an initial agreement. Well, that is true. But if you look at it the way the trial court did, and I would urge you not to, the trial court says everything we're saying about anything. I don't want to look. I want to just try to understand what you're arguing to us on appeal so that I can get some grasp of it. There's a 12 v. 6 challenge. Right. That goes to whether the complaint had sufficient allegations of an agreement as to these terms for the $70 million deadline. Right. That's either right or wrong.  If we were to disagree with you, what then happens when we now get to your summary judgment challenges? You could still reverse the grant of summary judgment and send it back to the trial court on just the Bible Way and Springfield dispute. Okay. Because as the appeal comes to us, those are discreetly challenged summary judgment rulings as to each one of those. They are. Okay. So let's, for my benefit, unless my colleagues would rather go a different way, it would be helpful to me if we could just take it in that order. So unless anybody has more to say about the $70 million deal, if you want to just go to the Bible Way summary judgment challenge. Sure. So Bible Way, and again, we go right to course of dealings, the bank says we breach Bible Way when we refuse to either complete the project or repay all the money. We say not so fast. Look at the course of conduct. The bank essentially accepts 19 months of interest payments beyond the original closing date on the contract. We would argue, and there's case law to support this, every month they're accepting that interest. They are creating a new contract. They're modifying the written contract. There is no default on Bible Way. They don't serve a notice of default until May of 2020. So Bible Way, the first party to breach, was actually the bank. And then you also look at Springfield. It's a very similar argument. The bank needs to say, because it's vital to the bank. Before you get to Springfield, let's just finish Bible Way. That's all you need to know about Bible Way. But they say that that wasn't a new contract formation. They say they were engaging in forbearance. If that's their best argument, then that argument can't help them, because forbearance itself is all a big question of fact. And this very circuit in the Newhoff case has a great discussion about forbearance and all of the factual matters that go into determining, have you foreborne on your right? How long would Green Earth have to continue in this? What I would claim is essentially— Do you understand their forbearance argument with the district courts to be dependent on the idea that the implied terms of acceptance of the payments past the closing or the end period were that you would commit to the full completion of all the projects? That seems to be their contention, right? I think so, and I'm not— I take it you're saying that that is just a pure fact question about whether that was the implied term of the agreement as it stood post the acceptance of the interest payments after the end period. Yes, and you look at the facts here. Green Earth had offered to return the Bible Way money way back in 2018, and the bank said, no, we won't take it back. So how can the bank say, we won't take the principal back, we're going to keep taking your interest every month, and then we're going to say 19 months down the road you've been in default the whole time? How do they fairly say that? That's the argument. Did they say—I read in your brief that you're saying they said that. Did they say anything besides we won't take it back? Did they say why we won't take it back? I mean, was there an expectation that you would use the money to either complete the Bible Beltway or the Springfield project? No. In fact, there's emails and phone calls in the record that are described where Green Earth informs the bank, this project is not moving forward. The property owner needs a bigger rehab than we want to do. This project will not happen. And the bank knew that, and the bank continues to accept the interest payments. So what did you understand was going on then? What was your understanding of what the state of the agreement was post the end date while you're making the interest payments if you're not going to complete the project? I think the fairest inference to be drawn is Green Earth and the bank both understood. So long as Green Earth was making the monthly interest payments, no one was ever going to call in Bible Way, and they were going to square it up later to mutually convenient date and time. That's the only inference to be drawn. Certainly, that's the inference I would argue at a trial. Essentially, Green Earth is buying itself a month at a time. It's a month-to-month tendency at that point. If you had returned the principal, would you have still been in default, or would you still have owed more interest payments that had accrued? Meaning if it had been returned, say, at the end of 19 months? Yes. Or at the point that you offered to return it, which was before that. If it had been returned as offered way back, I think it was in July of 18, then the full principal would have been repaid, and essentially a year of interest would have been saved, would have still been in the pocket of Green Earth. Green Earth never paid a penny of the principal back, so every time it's paying a monthly interest payment, the bank is just getting free money. It's still entitled to all of its principal and interest under the original loan papers. It's just getting extra, which is why, of course, the bank was fine with it, until the bank decided to pull the rug out from the whole thing because of Springfield. Springfield, of course, is dealing again. The same bank says, oh, you're in breach, you're in breach, because look at the original closing date in the written documents. But this same bank is giving out two different progress payments after the closing date. So you can't act like that and then feign surprise. You can't act like that and then feign surprise and say you've been in default the whole time. No, in fact, you breached, bank. You breached that deal. This is one thing I was having trouble understanding, whether the district court's rationale was that you were in breach the whole time or whether you were in breach at the moment post the payment of interest payments after the closing period or the closed date. What do you refer to it as, the end date or whatever? Right, the original contract end date or closing date. Yeah, the close date, okay. The receipt of the interest payments post the close date, you were in default at the moment that the bank understood you were not going to complete the project. That's different than understanding that you were in default the whole time. That is their position, and that's what the trial court is saying. Which is their position? That we were in default the whole time. They're saying that. So why is there that reference in the district court's opinion to learning that you weren't going to complete the project, or am I misremembering? I frankly don't remember that portion. I remember the trial court specifically saying that we were, per the language of the written agreement, in default the moment the original closing date ended and passed and that anything beyond that was a unilateral act of forbearance on behalf of the bank and that none of that matters in terms of looking at was there an event of default. The trial court and the bank are arguing, we are in default under the written terms of the contract, and nothing that happened outside of the writing can change that. That is what they're saying. That's what they have to say. Because if you let us look at the course of dealing, in fact, the bank breaches first. Thank you. Wait a minute, and just before you say that, and you're saying that the factual predicate to your allegation that the bank breached first was what? The failure to pay the next payment to you? That's right. So we allege that the bank breached Springfield when it refused to issue the final progress payment. Instead, the bank says, we're only going to pay you full on Springfield when you pay us back on Bible Way. And we would argue that is a completely improper unilateral imposition of a new contract term. The bank is looking for a way out of this relationship, and they're using Bible Way to do it. But they breached Springfield first. So the terms of the contract that are in both contracts, which says that they have a right to consider a breach of any of their contracts with you folks. There were certainly cross-default provisions in these papers, yes. But that's why the acceptance of the interest becomes so important. We would argue you're not at liberty to say we're hereby calling due Bible Way in full right now, even though you've been paying 19 months of interest, that your action of taking the 19 months of interest has created a new forbearance contract. There were new terms of that contract. You need to serve us with a notice of default, like the contract says you will, and proceed accordingly. You can't do what they did. So to sort of rule in your favor, we would have to say that Bible Way was not in default at the time that they refused to make that last payment to you. All you would need to say is that there were genuine disputes of material fact about whether Bible Way was in default. Just so I understand, there's this phrase, so I understand what the district court is saying and how you understand it. Against the background of the party's written agreement, KeyBank's refusal to advance the final progress payment for the SBGC project, is that the Bible Way project? That's Springfield. That's the Springfield project. Until GE paid the balance owed on the abandoned Bible Way project, was not the material breach alleged by you but an act of forbearance. And this is the sentence I just want to understand what you make of it. At that time, KeyBank would have been justified in accelerating the balance due under all the party's loan agreements, including the SBGC agreement. KeyBank's decision not to simply take the last severe step of delaying the final payment until GE met its obligations under the Bible Way agreement was not a breach of the Springfield agreement. Can you just help me parse what's being said there? I believe Judge Mastriani is saying that, again, under the written wording of the contracts, we were in breach the moment the Bible Way contract came and went, and we were in breach every single one of the 19 months we were paying interest, and it was just the 19 months of interest had no impact on our breach status. We would argue that's completely and totally wrong. That's a whole new forbearance contract now, and there's all kinds of questions of fact about that. And on that point, your take is there's just no evidence of that point by Judge Mastriani. That's right. Just assuming that that's not true, but there's no analysis of why that's not so. That's right, and this is why we have discovery, and this is why we have trials to get into the facts. Thank you. And that argument was made to Judge Mastriani that effectively a new contract was in place at that point because of the waiver. I could play you the tape from the summary judgment. It would be the same exact thing.  One more question. A new contract was, in effect, based upon the conduct of the parties, not any specific language of the written contract that you're referring to. Is that correct? That is exactly right. Okay. The course of dealing. The course of dealing. Thank you. Thank you, counsel. At this time, would counsel for the appellee please introduce herself on the record to begin. Good morning, your honors. May it please the court, my name is Melanie Conroy, and I represent the appellee, Key Bank National Association. Your honors, the district court's summary judgment decision should be affirmed. On appeal, as below. Why don't you start with the motion to dismiss? I'd be happy to, your honor. Although, I want to be entirely clear. Our position is that the motion to dismiss on appeal, the question that has been presented by the appellant, is whether the summary judgment decision was correctly reached. And our contention is that revisiting, retraveling the motion to dismiss decision is not necessary to the resolution of that question because the motion to dismiss pertained to an alleged oral agreement that was one year later and entirely separate and distinct for the contracts that are at issue in the summary judgment decision. Why can't they appeal that ruling, though, now, can't they? Or was there a summary judgment on that? How else could they have ever appealed the dismissal of that claim if they can't do it in this appeal? Are you saying they didn't raise it in their notice of appeal? I'm not arguing that it has been waived. Certainly, a sub-argument to their contention that the summary judgment decision was not correct is that it's a subsidiary argument, is that the motion to dismiss argument was not correct. Our response is that the summary judgment decision did not rest on the motion to dismiss decision. He disagreed with you on that in the sense that he's saying if he wins on his 12B6, the challenge to the 12B6 dismissal, that agreement, he has a claim that comes back to life that's otherwise dead. And I can address that after addressing the summary judgment question, Your Honor, because I agree with that. There is a separate and distinct reason why the summary judgment is sound based on the agreements that are at issue there. Are you saying the dismissal argument is somehow subsumed in the summary judgment argument? Why is the dismissal argument distinct? It's not presented in a manner that is distinct. As I read the appellant's papers, nonetheless, in addressing the question in a distinct manner. If we disagree, why is the district court right? On the dismissal? On the dismissal. On the dismissal? Yeah. Absolutely. I could jump into that. Even though we believe that the district court's dismissal is not material to the question of summary judgment, the conclusion is correct. In their pleading, the appellants pleaded no definite terms that would enable a court to determine whether a breach occurred and if in the event a breach did occur. That means you think the district court was right in the outcome but wrong in its reasoning. Well, we also believe that the court's reasoning as to the manifestation of it. I thought the district court said that there were definite terms. To be fair, Your Honor, I don't believe that the court parsed the alleged terms in its decision and rested its reasoning on intent. It did state in its decision that it believed specific terms existed. Do you think the district court was wrong in saying that? We would not agree with that characterization. We certainly would not agree because we do not. So the district court was right? Pardon me? The district court was right? Absolutely. So there weren't specific terms? There were no specific terms, no. There were no pleaded terms that would permit a court to determine whether a breach occurred or an appropriate remedy in the event that they found that such a breach occurred. And the pleading is devoid of any facts that would demonstrate that the parties intended to be bound You're jumping back and forth between two. Intent to be bound is different than specific terms. That's right.  So on specific terms, I take it you're just standing with the idea that despite the district court saying the terms were specific, there just weren't any. The court certainly identifies none in its decision, and we are not able to in parsing the pleading. We see an allegation Wasn't it $70 million? Wasn't that a specific term, the amount of the loan? That's correct. Effectively a blank check for $70 to $80 million. Why not in return for various projects that couldn't be specified because they were going to have to occur over various years that were to the scheme that they were jointly talking about? Why is that not specific enough? Those necessary terms would need to exist. Terms such as per kilowatt hour pricing, the identification of projects. These were sale-leaseback agreements. What would be the appropriate rate of rent? What would be the term? At what point would they redo? And setting all of that aside, this is integrated with the fundamental problem here, that these were contemplated to be five-year leaseback agreements for separate and discrete projects that according to the party's progress were The allegation is that KeyBank is the one who wanted to switch up the modeling and to do so in a way that was advantageous to the bank getting the energy credits. We certainly do not And it was based upon Green Earth's prior dealings with building these solar projects and they had an experience with the bank on the success of those. Yes. So there was one, I believe what you're referencing is the Wimogo lease, which was the single deal that actually did have a discrete agreed-upon contract with specific terms and intent to be bound to follow that sale-leaseback model. It was completed. The bank expressed, at the time the alleged oral promise was created, an interest in pursuing like projects and pursuing the possibility of an increased line of credit and syndicated debt in order to fund that. That future aspirational forward-looking statement that this would be a possibility neither provides the specific terms because the parties in discussing this contemplated that there would be and this is where the party's course of dealing is. It's relevant to this question if you consider it necessary for consideration is that the parties continued to have discussions and discussed how the terms of future projects may or may not differ from the Wimogo transaction. These terms were amorphous and they were not definite. And as an example of that, I would point the court to the appellant's reply. And the appellant's reply for the very first time in response to our statute of frauds argument, they attempt to argue that the alleged oral promise was not in fact a promise to lend $70 to $80 million to develop solar facilities in five-year term leasebacks, the term of which would be an issue for the statement of frauds, but now for the first time says that it was an oral agreement to engage in the development of projects within one year. The very malleability of the alleged oral agreement and the very fact that appellants can reshape its indefinite terms at will demonstrates that this was not sufficiently definite and therefore was not enforceable and that the motion to dismiss was properly granted, albeit on other grounds, but that would be sound grounds to likewise affirm the motion to dismiss decision. Unless there are additional questions on terms. If the district court in fact found that from its perspective that it was specific enough but then moved on to the issue of intent and essentially made a plausibility determination, is that correct? That is correct. In a summary fashion, without identifying and parsing the definiteness of specific terms and whether they would aid the court in determining whether a breach occurred, the district court did say specific terms exist, therefore I'm continuing my analysis as to the party's intent to be bound. And I want to respond to a statement in appellate. How could you focus on the second piece of that intent to be bound? Are you saying that that was correct? Absolutely. The district court correctly found that the parties had not manifested and it was not plausibly pleaded in the pleadings that there was a manifested intent to be bound. And in reaching that decision... In the court's reliance on its own banking expertise, the banks don't do this, is that correct? I do not agree with that characterization of the court's analysis. The court conducted a thorough examination of the parties' prior dealings, how the parties contracted reached agreements and how those agreements were memorialized and the attendant language around that and found that it was the parties' practice to carefully and intentionally structure separate and discrete agreements for each project and commit it in writing. In fact, add issue as to your other questions about the summary judgment decision. Is that appropriate to be doing that on the 12B6 stage? Well, in that, yes, Your Honor, and for this reason because the... Is that outside the pleading? The pleading invoked the parties' course of dealing and the existence of these prior separately executed agreements. And instead, in addition to the pleading specific to this argument, the pleading cited aspirational statements by the parties that should the WAMOGO lease meet success... What was the evidence or what was the external document that the court relied upon that it could properly incorporate into the complaint itself? So the record before the court included the parties' principal agreements. In particular, the business loan agreement, which was executed in 2017, directs that it will be incorporated and supersede any contradicting terms and any subsequent agreements among the parties. And that in and of itself directs that the parties' agreements must be committed in writing. And subsequent to that agreement... I guess the question is if the court made a determination that it was sufficiently specific in this case, is it correct on a 12B motion for the court to then go on and do that kind of legal analysis as opposed to accepting the allegations and the pleading that in this particular instance, parties deviated and whether or not they deviated should be a matter of a factual determination that's for the trier of fact. I mean, I think that's their argument. And, Your Honor, I would respond that it is the appellant's own pleading that introduced these alleged facts concerning the parties' prior dealings and executed agreements. And in addition, allege that in October of 2018, there was an in-person meeting where the parties expressed aspirational comments to one another to potentially proliferate a successful model, if indeed it met success and the state's smart energy project continued to be available and offer tax advantages. And we would contend it is appropriate on the face of the pleadings that the court did consider the parties' prior dealings as well as the contracts that were incorporated by reference into those pleadings and view them in light of the specific allegations as to what verbal communications and aspirations were exchanged in October 2018. And then the court also went on to look at the parties alleged in the pleading by the appellant's subsequent behavior following that meeting, that the parties continued to have a dialogue and make inquiries as to the potential success of the Lomongo project that could provide as a potential model as to whether or not the terms of the Lomongo project would or would not be suitable in view of future terms, whether terms such as kilowatt hours or the type of project that was approved would differ. So the court did not merely reference generalized or abstract or its own banking experiences. It closely examined the parties' prior dealings as alleged, the documents, the loan documents incorporated by reference into the pleading, the specific allegations with regard to the October 2018 meeting where verbal aspirations were expressed, and then the parties' subsequent conduct when they discussed the potential for a new deal. On the summary judgment question, you heard the exchange where their contention is because you blew past the deadline, they blew past the deadline, you still accepted interest payments. Their contention was that meant that effectively we had new terms at that point. As I read the district court's opinion, and I guess you heard your opposing counsel's description of it, the district court doesn't engage directly or expressly with the contention that there is effectively a waiver and we're now in a new world. So what are we to make of that fact? So I read the district court's decision differently. I read that it did thoroughly consider a waiver argument. Where does it do that? When it stated that the bank's extension of a payment deadline on the Bible Way Agreement could be at most considered an act of forbearance and not waiver. I believe that's the language that the district court used. You can try and find the precise page site there. But in the interim. Is it for, I mean, would it be forbearance? I mean, is the idea that it would be forbearance? I'm sorry. No. But it's just to accept the payments is the part that I'm having a little trouble with. Not accept the payments. Accelerating the balance, that would be forbearance. They could have said it's due right now. Instead they said, okay, you can take some time. But their point is that if you're accepting the interest payments past that time, that's a different contention. Certainly, and I have a few responses to that argument. Just as a first cut, does the district court address that point? It was raised. If I may. I believe inherent in that consideration is that the court found that the original loan documents did enforce two separate obligations to pay. The obligation to pay interest and the obligation to repay the principal or to convert that balance to a promissory note in a completed project. And here we would argue that it's impossible that this is a new or unilateral agreement that was created by a course of conduct because the parties' loan agreements, specifically the Bible Way and the Springfield Agreements, contain an obligation to pay. The failure to do so timely is a defined term, default, as this court previously determined in our prior appeal. Under the contract they could say, now you have to give us the whole balance, right? That's correct. And they didn't do that. They furnished a final payoff amount in February 2019. Okay, but initially they don't do that. For that interim period, substantial period, they don't say it's due. Subject to representations as late as November 2018 that the Bible Way project would be completed imminently. Okay, so that's forbearance. And then the idea is that the acceptance of the interest payments during that period is part of the forbearance? The acceptance of interest rates, that's an entitlement under the fundamental loan agreement that if the balance is not repaid in full, there is an ongoing recurrent obligation to pay interest on the outstanding amount. So from your perspective, that's just sort of an irrelevant fact because obviously if we forbear, you're still going to have to pay the interest. That's correct, until the loan amount in full has been repaid. That's exactly right. So there's really no way to recharacterize that as a new contract. That's just what it is when we forbear on our right to get the whole balance. It's just you keep paying the interest in the interim. That's correct. Prior promises are not present consideration. It fails a fundamental test here. If the court, we would not argue any formal forbearance argument was entered into. Merely the bank chose not to exercise the most draconian option here, which is the logical extension of the rule of the appellant's urge. It would absolutely chill commercial lending and create a hostile environment for borrowers. If to maintain its rights, a bank must immediately enforce to the extreme every single remedy under an agreement. But even then, even if the court were to entertain that this created some kind of formal forbearance expectation or promise, the exchange here— So just to be clear, on this theory, at any moment they could have called the full balance due. And the fact that interest payments were being made during the period in which they chose not to do that doesn't show anything other than they just weren't calling the whole balance due. That's correct. On the representation, the project would be completed. When that representation was withdrawn and the project was repudiated— But I guess what I'm saying is independent of the representation. Okay. Even if no representation were made, it comes due. They just decide, no, we're not going to make you pay at all. And if you pay the interest payment the next month, then you made the interest payment the next month. But we still could just do the full any time. So the representation is kind of irrelevant from this legal theory. Is that right? That's correct. On the four square corners of the loan agreement, that's exactly right. The bank is entitled to receive interest on a balance outstanding and the repayment of the full amount due or conversion to a promissory note on a completed project. And the question of whether in the event where the full amount is not repaid when due— But just so I understand, on this theory, after the loan, the full balance was due, and the bank chose not to call it in, was there any legal obligation to pay interest on the part of the plaintiffs here? Until the amount was repaid in full, yes. Is that true under the terms of the contract, given that the contract was, here's what happens if you do this, then we can accelerate everything? Was there a term that said until that full thing is paid, even if we don't choose to exercise our rights, you still have to pay interest on it for every month thereafter? Yes. There is an unconditional— The terms of the loan agreement are absolute and unconditional obligation to pay. The obligation to pay interest is basically the obligation to pay interest on the balance owed. That balance was still owed after the outside term closing date. A little bit differently, we have no doubt that the contract says that the interest will accrue. Does the contract specifically say that the interest payments are due and payable on a monthly basis? I believe that is correct, Your Honor, and I believe that the contract was— I don't believe that the contract expressly delineated that interest payments would be due and payable on a monthly basis past the termination of the outside closing date. However, in the absence of a payment schedule outside the outside term closing date, I think the only plain language, reasonable reading of the contract is that the payment schedule set forth in the agreement otherwise would continue to apply, and it's affirmed by the party's conduct. The more we start talking this way, the more I start worrying whether we're in a fact world where maybe a juror should be answering this question. Well, firstly, a jury is not available on the breach of Springfield contract claim asserted by Greenert. I hear your concern, and that is why—absolutely. Our position is that it is only necessary to view the uncontested facts. The parties are in complete agreement. It is a remarkably undisputed case. Which agreements govern that they're enforceable, they're unambiguous, what their terms are, as well as the party's payment and billing history. I guess we're trying—what was the agreement as to what would happen with respect to how interest would be—what would happen with respect to interest payments or interest on the balance of the loan past the close date? What was the agreement as to that? It's calculable. Per the contract, it is calculable. It accrues on a monthly basis. What was agreed to? What was agreed as far as payment is concerned? It may not say anything, but once again, if it doesn't say anything and we've got to go by the customs of the parties, then it feels like we're back into that factual determination world. The contract provides for monthly interest payments that are due and payable until the balance on which the interest is being paid is paid in full. When did that obligation begin? At the inception, as soon as the balance accrued. So at the very first progress payment on the Bible Way project for, I believe, $184,000, beginning after that disbursement, interest began to accrue and be due on a monthly basis on that balance. And was it paid for a period of time? It was paid for a period of time, yes. And then this beginning date for the 19-month where they accepted just the interest payments, so there were interest payments made up to that point? Up to that point and after. Up to that point, interest payments were made. Were any principal payments made up to that point? No, no principal was repaid. And then they continued after that date is what you're saying, the interest payments? Precisely, as the principal remained outstanding. Okay. And the principal still remains outstanding. Thank you. All right, thank you, Your Honors. At this time, would counsel for the appellant please reintroduce himself on the record? He has a two-minute rebuttal. Hello again, Benjamin Duggan for the appellants. I'll just dive right into this question on this contract. If you read the contract, which, of course, is in the record, it does not call for monthly interest payments after the passage of the original closing date, what the contract says is the bank has the right to notice a default and then take possession of the collateral, which in this case was the Bible Way solar panels. What does the contract say as far as interest payments after the initial payment is made, which is what counsel said would trigger the beginning date of interest payments? The contract says that one of two things has to happen by the closing date. Either everything has to be paid back, principal and interest, to that date, or we have to convert this contract to a different type of note because the project is now finished. Other than that, the bank's rights are issue a notice of default and seek a receivership and take collateral. It doesn't say anything about interim interest payments. The contract, my reading, and I would welcome you to read it, of course, my reading is that contract is totally silent on what happens where we reach the original closing date and the parties don't want to either go down the default road or convert it to a different type of note, which is exactly what they did here. They just agreed between conversations and course of dealing, we're just going to keep paying interest on a monthly basis. Can you just answer one question for me? Why isn't that just a classic partial forbearance? Well, it may be a forbearance. In fact, if it is a forbearance, I would say that's good for us because forbearance by definition requires all sorts of factual questions and determinations and, most importantly, you have to determine as the fact finder, well, forbearing until when? Why wouldn't it be perceived as, how would it be perceived as anything but a partial forbearance? Even if that is correct and we're forbearing month by month. Can you just answer my question? I would agree that that is a reasonable reading of those facts, that it is a partial forbearance. So what then, what's left to decide? So we can look at the month where the real action occurs in 2019, where finally you get the email in April of 2019 from Key Bank that says, we're not going to pay Springfield until you pay Bible Way. Their problem is that the interest payment had been paid in the month of April of 19. So the forbearance contract, the partial forbearance in effect, had been paid, the consideration had been given. At the very least, Green Earth gets until the end of that month. Maybe I'm misunderstanding. When you say forbearance contract, why isn't it just better understood as they just didn't exercise a right they had. They forbeared from exercising that right. And the right remained to be exercised at any time they wished. But not any time they wished. Why not? Because when you're taking the monthly interest payments, you are agreeing to essentially modify the terms of the contract. So just to be clear, had the interest payments not been made after that date, you would then agree that the fact they didn't call the whole loan due didn't prejudice their ability to call it due whenever they want. I agree with that. Okay. So now it's the interest payments are the thing that are saying, made in effect a new contract. That's right. And that's because you say, just so I follow, nothing in the contract speaks to any obligation to continue to pay interest payments even though the full loan hasn't been paid. That's right. As of the date that it's due. That's right. So what would happen if they, on your view of the world, if they just forbore, they decide not to call the whole loan due, no interest payments were made, the interest would accrue on your view, wouldn't it? Interest accrues, yes. And so then they would have to, you would then be able to call, they would have been able to call in the whole loan plus the interest over the period of time by which they didn't call it due. That may well be. May well be or is true? That is true in your factual universe. Okay. But that's not what happened here. And so what about this is different by virtue of the fact that you chose voluntarily to pay interest, which would obviously mitigate the amount of interest that they would be able to get from you for the period during which they were forbearing? Our position is every single month where interest is offered on the month and the bank accepts it on the month, buys Green Earth at least that month to make good on the rest of the estimation. And where do you get that idea from? From what other interpretation could there be? The other interpretation is that the interest that's accruing, that they would be able to recoup from you during the period of forbearance, now can't be recouped because you paid it. That was certainly not the understanding of Green Earth. And Green Earth and Chris Sikorka testified about what they understood they were doing with the payment of the interest. Was there any authority that would suggest that Green Earth is entitled to have that understanding of the world when they're clearly in breach? Well, sure. There's all the cases that say look at course of dealing. And we have a party here who clearly understood I'm buying something, I'm buying myself time with this payment of interest. The bank was happy to take it. That's really all you need to say there's a question of fact. Thank you. Thanks. Thank you, counsel. That concludes argument in this case.